**MULLEN CONSTRUCTION CO., Inc.,**
**Plaintiff,**

v.

**GRANBY TELEPHONE & TELEGRAPH COMPANY and Hadley Falls Trust Company, Defendants.**

**DESIGN SERVICE COMPANY, Inc.,**
**Plaintiff,**

v.

**GRANBY TELEPHONE & TELEGRAPH COMPANY, Defendant.**

Civ. A. Nos. 57–357, 58–595.

United States District Court
D. Massachusetts.

May 25, 1961.

Edmund Burke, Hale & Dorr, Boston, Mass., for plaintiffs.

Peter W. Princi, Boston, Mass., for defendant Granby Telephone & Telegraph Co.

CAFFREY, District Judge.

These are two actions of contract which were consolidated for purposes of trial. In each case the defendant is

9. Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850.

the Granby Telephone & Telegraph Company (Granby). Both cases arise out of the change-over of the Granby, Massachusetts, telephone system from a hand-crank magneto type to an automatic dial type. The plaintiff in one case is the engineering firm which designed the change-over and the plaintiff in the other case is the contractor who performed the construction work made necessary by the change-over.

In Civil Action 57–357, Mullen Construction Co., Inc. (Mullen), a corporation organized under the laws of the State of Wisconsin, with its principal place of business located in Appleton, Wisconsin, seeks to recover from the defendant Granby, a Massachusetts corporation with its principal place of business located in Granby, Massachusetts, the sum of $20,756.94, plus interest, upon the basis of a written contract entered into on April 2, 1956 and subsequent amendments thereto, said contract being identified as Granby Construction Contract, No. 3–X.

In Civil Action 58–595, Design Service Company, Inc. (Desco), a corporation organized under the laws of the State of New York, with its principal place of business located in New York City, seeks to recover from the defendant Granby the sum of $22,017.90, plus interest, upon the basis of a written contract between the parties dated September 10, 1954, identified as Engineering Service Contract No. 1–E, REA Form 517, 7–53. This contract required Desco to provide certain engineering services, consisting of the design and supervision of a proposed plan for the change-over of the Town of Granby telephone system from magneto type to automatic dial type.

In its complaint Desco alleges, in substance, full performance by it of its various obligations under the contract. It also alleges that under the formula set out in Article 6 of the contract for determination of compensation to be paid to Desco by Granby, Desco is entitled to $15,623.77 and that Granby has paid only $5,544.10 on account of this sum. Desco claims a balance due on the contract proper of $10,079.69 and Desco also claims the sum of $11,588.28 for "extra" services alleged to have been supplied by it at the request, either express or implied, of Granby.

There was evidence at the trial and I find that Desco performed the requirements of its contract with Granby. It will serve no useful purpose to spell out at length the precise requirements of the engineering contract. Suffice it to say that the witness Geiss testified that plaintiff Desco did perform the various obligations imposed on it by those articles of the contract which called for action or performance by Desco.

At the trial Granby contended that Desco was not entitled to the compensation it claimed for performance of its contractual requirements, chiefly for the asserted reason that Desco in the execution of the area coverage design did not properly anticipate the extent of the growth of the population of the Town of Granby, as a consequence of which, Granby contends, the system as designed is inadequate to handle the needs of the town during the ten year period referred to in the contract. I find that the area coverage design was adequate, and I further find that this portion of Desco's performance was done by it in reliance on and upon the basis of information contained in an Area Coverage Survey supplied to Desco by Granby, so that if it could be found that the area coverage design was inadequate, this inadequacy stems from information supplied to Desco by Granby. I further find that to the extent there was any unanticipated growth in the population of the Town of Granby, it was due to an influx of Air Force personnel caused by the transfer of a new unit of the Strategic Air Command, United States Air Force, to nearby Westover Field. This influx occurred after "cut-over" of the new system in August 1956. No evidence was offered to indicate that Desco could or should have anticipated an addition of this type to the population of Granby. While not basing the finding of adequacy of design on this point, I

find it not without significance that at the trial Granby produced Professor Turner, an expert in the field of telephone engineering with a substantial background in the field of communications, and failed to elicit any opinion whatever from Professor Turner with regard to the claimed inadequacy of the area coverage design.

■ With regard to Desco's claim for "extras," I find that the chief executive officer of Granby badgered both plaintiffs with an incessant stream of complaints regarding almost every phase and aspect of both the design contract and its performance and the construction contract and its performance. I find that because of these complaints, additional inspections were made necessary and I find that $6,761.78 out of the amounts set out in plaintiff's Exhibit 5 are fair and reasonable charges for the inspections made, and that these inspections were made at the request, either express or implied, of the defendant Granby.

I find for the plaintiff Desco in the amount of $10,079.67 on the contract and in the amount of $6,761.78 for extra services, or a total finding of $16,841.45, plus interest and costs.

With regard to Granby's counterclaim against the plaintiff Desco, which is premised on an allegation that plaintiff has failed to properly perform all that was required of it under the provisions of the contract, the counterclaim is denied. On the basis of the foregoing I find that plaintiff has properly performed its contractual obligations and I find for the plaintiff Desco on Granby's counterclaim.

■ With regard to the claim of the plaintiff Mullen, a preliminary issue to be disposed of is whether or not Amendment No. 1 became part of the original contract as an amendment thereto. I find and rule that it did. It was accepted in writing by the President of both Mullen and Granby. In its complaint Mullen seeks to recover $15,155.23, the balance due for work allegedly performed by it under its contract. Mullen ar-

rived at this figure by taking the original contract price of $200,321.56 and crediting Granby for $179,565.52 admittedly paid, plus an additional credit of $5,590.81 claimed by defendant in paragraph one of its counterclaim against Mullen, which is conceded by Mullen to be due Granby in payment of cable purchased from Granby by Mullen.

In its complaint plaintiff Mullen alleges full performance by it of its contractual obligations. The defendant Granby, on the other hand, denies that plaintiff fully performed its contract and has filed an amended counterclaim based on several different legal theories in which Granby seeks to recover from Mullen a total of $78,368.67.

■ I find that plaintiff Mullen entered upon a performance of its obligations under this contract in April of 1956, and that it substantially performed in accordance with its contractual undertaking. I find that because of this substantial performance, the town telephone system was "cut over" from a magneto system to an automatic dial system on August 16, 1956, and I find that as of that date at least 90 per cent of the installations were in proper working order and that 100 per cent were in operation approximately a week later. I find that plaintiff's performance of this contract was completed as of that date, and I further find that control of the system was turned over by Mullen to Granby, with the written approval of Granby's President, on September 17, 1956, as evidenced by plaintiff's Exhibit 3.

After cut-over, Granby's chief executive expressed continuing dissatisfaction with the work as performed by Mullen, and I find that as a result thereof several additional inspections of the system were made. Most of these inspections were of a spot-check nature, and I find that various corrective steps, particularly in the area of tree trimming, were taken from time to time. I further find that as a result of these persistent complaints, a conference between all in-

terested parties was held in New York City on January 21 and 22, 1957; that at this conference Mr. Mugnier, President of Granby, stated that he was basically satisfied with the construction; that he further stated that he had been advised by qualified communications engineers that the transmission in the Granby system was of a very high quality; and that his only complaints were with regard to station installations and tree trim. As a result of the conference, in an effort to resolve differences between the parties so that the project could be completely closed out, an inspection of all 800 telephones in the Town of Granby was performed by one Hammond, whom I find to be an experienced former employee of the Bell Telephone Company. Hammond obtained a written report from substantially all of the telephone subscribers in the town, which report was introduced into evidence as plaintiff's Exhibit 19. This document contains several hundred pages, each executed by a different subscriber, and I find that the overwhelming majority of the subscribers who reported to Hammond in writing in 1957 were either completely or substantially satisfied with those phases of the telephone service for which the plaintiff Mullen would be responsible. (It might be noted that some complained that the telephone rates were too high.) Of the 800 reports filed by Hammond, 54 per cent (442 installations) were found to require no attention of any kind. Of the remainder some 25 per cent (206 installations) required work which I find to be of the character of normal maintenance, and some 21 per cent (162 installations) required work of a minor nature, such as minor tree trimming, placing an insulator here or there, or dressing up or straightening out drop-wires. Only this last group could be said to involve defective workmanship, and this was limited to minor items. I further find that none of those items included in the Hammond report would actually interfere with the operation of the system. I find, also, that employees of Mullen installed telephones in 551 homes and employees of Granby installed telephones in 249 homes, which fact creates a substantial doubt as to the extent of Mullen's responsibility for those installations found defective in the Hammond report, since the report did not differentiate between installations made by Mullen and installations made by Granby.

I find that while some errors were made by Mullen in the installation of this telephone system, these were eventually corrected without charge to Granby, and the vast bulk of complaints were of a picayune nature, and that the demands of Granby far exceeded normal standards of contractual performance. An example of the nit-picking nature of Granby's demands is the demand that Hammond check each of the 800 telephone installations in the town as to 102 separate aspects of each installation.

There was testimony and I find that with regard to the over-all construction contract which, of course, included pole line erection, cable installation, drop-wire and station installation, etc., the so-called "Hammond items" amounted to less than one per cent of the dollar value of the total job.

I find and rule that under this contract plaintiff Mullen is entitled to recover from Granby the sum of $15,155.23, plus interest and costs.

With regard to Granby's counterclaim against Mullen, it was conceded at the trial that the claim set forth in Paragraph 1 of the counterclaim, in the amount of $5,590.81, is in fact due and owing to Granby for cable purchased by Granby for Mullen. This amount has been credited to Granby as against the original contract price of $200,321.56.

With respect to the balance of the counterclaim, having found and ruled above that Mullen substantially performed its obligations under the contract, the remaining portions of the counterclaim are denied, and I find for the plaintiff Mullen on Granby's counterclaim.